IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLY HUMAN,

               Plaintiff,

         vs.                             Case No. 05-1001-JTM

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.

## MEMORANDUM AND ORDER

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, which authorizes judicial review of a final agency decision. The court notes that this review is limited to the administrative record as presented before the ALJ and the arguments presented by counsel in reconsidering plaintiff's application. Plaintiff argues that the Administrative Law Judge (hereafter "ALJ") improperly formulated an RFC and improperly evaluated her past relevant work. Defendant responds that substantial evidence in the record supports the ALJ's findings. After reviewing the parties' arguments, the court finds in favor of defendant.

## I. BACKGROUND

This suit involves an application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (Tr. 49-51). Plaintiff Kimberly Human was born in 1957 and alleges that she became disabled on September 30, 2002, at age 45 (Tr. 49). Plaintiff had a high school education (Tr. 72), and had worked as a cutter in a rubber shop,

distribution technician, and limousine driver (Tr. 67, 75-80, 111-12).

On December 10, 2002 (Tr. 13, 52), plaintiff filed an application for disability.  At the hearing, plaintiff amended her alleged onset date to February 9, 2003 (Tr. 17, 271). Plaintiff, in the Disability Report, listed her impairment as arthritis in the knees, legs, lower back, and hands (Tr. 66).  Ms. Human's application was denied initially (Tr. 23, 25-28), and after reconsideration (Tr. 24, 34-37).  On July 30, 2004, after a hearing (Tr. 266- 99), an ALJ found that plaintiff was not disabled at any time prior to the date of the decision (Tr. 10-22).  On November 2, 2004, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision (Tr. 5-7). Thus, the ALJ's decision stands as the Commissioner's final decision. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II of the Act.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."  Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401-02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Miller v. Chater, 99 F.3d 972 (1996); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989); Kemp v. Bowen, 816 F.2d 1469, 1475 (10th Cir. 1987).  Substantial evidence requires the presence of enough relevant evidence that a reasonable mind might consider the Secretary's decision adequately supported.  Richardson, 402 U.S. at 401.  The court must scrutinize the record and take into account whatever evidence fairly detracts from the evidence supporting the Secretary's findings.

Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984). An absence of substantial evidence will be found only where there is a conspicuous absence of credible choices and no contrary medical evidence. Trimiar v. Sullivan, 966 F.2d 1326, 1328 (10th Cir. 1992). Evidence is insubstantial if it is overwhelmingly contradicted by other evidence. O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir.1994); Frey v. Bowen, 816 F.2d 508, 512 (10th Cir. 1987) (citations omitted). The function of the district court is to determine whether there is evidence to support the decision of the Secretary and not to reweigh the evidence or try the issues de novo. If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.

The Secretary employs a five step process in determining the existence of a disability, Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), a process which ends at any point if the Secretary determines the claimant is disabled or not. The steps, in order, require determinations of whether the claimant: 1) is currently engaged in substantial gainful activity; 2) has a medically severe impairment or combination of impairments; 3) has an impairment equivalent to one of a number of extremely severe impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1; 4) is unable due to the impairment to perform past work; and 5) has the residual functional capacity to perform other work available in the national economy, considering age, education, and past work experience. See Kemp v. Bowen, 816 F.2d 1469, 1474-75 (10th Cir. 1987).

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). The

burden is on the claimant to prove the existence of a disability that prevents him from engaging in his prior work for a continuous period of twelve months. <u>Trimiar</u>, 966 F.2d at 1329. If the claimant makes such a showing, the Secretary must show the claimant is able to do other work in jobs present in the national economy. <u>Sorenson v. Bowen</u>, 888 F.2d 706, 710 (10th Cir. 1989).

## III. ANALYSIS

Plaintiff argues that this court should reverse and remand the Commissioner's decision. First, plaintiff argues that the ALJ failed to form a proper RFC, and the RFC is not based on any medical evidence of record. Second, plaintiff contends that the ALJ failed to perform the proper analysis at step four of the sequential evaluation process. Finally, plaintiff finds fault in the ALJ's three step analysis under Social Security Rule 82-62.

## A. ALJ's RFC Formation

In contending that the ALJ formed an improper RFC, plaintiff claims that the ALJ failed to consider problems with plaintiff's Achilles tendon and failed to review a complete record as to this condition. Furthermore, plaintiff argues that the ALJ did not consider plaintiff's status post carpal tunnel release as severe by failing to include a limitation. Finally, plaintiff argues that the ALJ should have considered plaintiff's obesity in combination with her other impairments.

SSR 96-8p instructs that an ALJ should consider all limitations, even if they are not labeled as severe. "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." SSR 96-8p. In addition, under SSR 96-8p, an ALJ must do the following when formulating an RFC:

1. RFC must include a narrative discussion of how the evidence supports each

4

conclusion, and cite specific medical facts and non-medical evidence;
2. Must assess an individual's ability to perform sustained work activities in a work setting on a regular and continuing basis; and
3. Describe the maximum amount of each activity the person can perform.

SSR 96-8p.

In the present case, the ALJ concluded that Human had the impairments of degenerative disc disease of the lumbar spine, arthritis of the knees, status post carpal tunnel release and obesity (Tr. 17). In reviewing these conditions, the ALJ noted that these impairments had "more than a minimal effect on the claimant's ability to perform basic work-related activities." (Tr. 17). Despite acknowledging that plaintiff's impairments were severe, the ALJ found that the physical impairments did not meet or equal the severity of any of the listed impairments. The ALJ specifically considered plaintiff's obesity and found that even with this, claimant did not meet the criteria for any part of listing 1.00 for musculoskeletal impairments (Tr. 17).

The ALJ specifically indicated that Human's impairments of tendonitis of the Achilles tendon, a recent right knee injury, and a left ankle injury were not severe impairments. (Tr. 17). Although plaintiff makes issue of her ankle and knee injuries, her attorney during the hearing noted that plaintiff's impairments, except for her back impairments, did not meet the durational requirements. Dr. Heady's examinations through February 2004, indicated that plaintiff had "minimal tenderness to palpation over the Achilles," and plaintiff was able to "stand and walk with no appreciable antalgia or gait disturbance." Further, there is no evidence based on the hearing testimony on March 4, 2004, that plaintiff continued to have problems with her Achilles tendon or that she ever used a heel pad as recommended. In response to questions about her left foot, plaintiff testified that she was not using the CAM walker and was not experiencing pain.

As for plaintiff's status post carpal tunnel, plaintiff argues that the ALJ determined the

5

condition to be severe but included no limitations for the impairment in the RFC.  The weight the

ALJ placed on plaintiff's status post carpel tunnel turned on the ALJ's credibility determination.

Generally, credibility determinations are the province of the ALJ, who is the individual optimally

positioned to observe and assess witness credibility, and such determinations will not be upset

when supported by substantial evidence.  Nelson v. Commissioner of Social Security Admin.,

252 F. Supp.2d 1148, 1155 (D. Kan. 2003); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Plaintiff's attorney stated that the carpel tunnel had resolved after three months.  During

questioning, the plaintiff initially stated she could return to her previous employment but then

later testified that she could not perform repetitive work. The court defers to the ALJ's credibility

determination, especially where the testimony appears to indicate that plaintiff gave contradictory

answers.  Plaintiff has not shown that her carpal tunnel caused limitations beyond what is

specified in the RFC.

As for obesity, plaintiff claims that the ALJ did not properly consider this factor in

formulating the RFC.  However, the ALJ made several detailed findings as to this condition.

First, the ALJ noted that the impairment was severe. Next, in reviewing obesity at the third step

of the sequential analysis, the ALJ found that the named impairments and obesity did not meet

the listings.  The ALJ specifically stated "[e]ven considering the effects of obesity, the claimant's

impairments do not meet the criteria of any part of listing 1.00 for musculoskeletal impairments."

The ALJ found that plaintiff did not exhibit major joint dysfunction and had never required

reconstructive surgery of a major weight-bearing joint as specified in Listings 1.02 and 1.03.  She

does not have the inability to ambulate effectively as defined by the listing.  Based on these

listings, the ALJ did not include restrictions beyond those stated in the RFC.

Finally, plaintiff argues that the record was incomplete and did not include Dr. Heady's medical records. Even if her impairments were not severe, plaintiff argues that her impairments should be considered by the consulting doctor. The ALJ found that the evidence entered into the record after Drs. Kim's and Stockwell's assessments did not provide any new or material information that would alter any findings about plaintiff's RFC (Tr. 20). Since there was no conflicting assessment by any treating medical source, the ALJ used the consulting doctors' analyses. The ALJ did not ignore all evidence after March 2003, but rather considered and rejected the new evidence as providing any support for plaintiff's claim of disability.

**B. Step Four of the Sequential Evaluation Process**

Plaintiff argues that the ALJ failed to perform a proper analysis in the sequential analysis. Under SSR 82-62, the ALJ's decision must contain among the findings of fact:  1) a finding of fact as to the individual's RFC; 2) a finding of fact as to the physical and mental demands of the past job/occupation; and 3) a finding of fact that the individual's RFC would permit a return to her past job. SSR. 82-62.  Furthermore, 20 C.F.R. 404.1520(e) requires:

> careful consideration of the interaction of the limiting effect of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work.

SSR 82-62.

The vocational witness expert determined that plaintiff could return to her past work as a rubber goods assembler and distributing clerk since both jobs were light in exertional nature (Tr. 21).  The vocational expert, however, stated that claimant could not return to her work as limousine driver because it was medium in exertional level and was incompatible with her current light residual functional capacity.

The record indicates that plaintiff performed past work as a cutter in a rubber shop. In this position, plaintiff lifted more than 10 pounds frequently and 20 pounds occasionally (Tr. 76). She reported that she sat for eight hours during the work days but also stated that she lifted and carried boxes about five feet for half the day. (Tr. 76). This indicates that the position required some walking and standing and was not completely an eight hour a day desk job. Plaintiff states she left this job because she found a better paying job, not because she could not perform the job. (Tr. 81, 285-86).

The record also indicates that plaintiff worked for ten years as a distribution technician. (Tr. 77-78). Plaintiff stated that in a normal workday she stood, walked, sat, climbed, stooped, kneeled, crawled, reached and handled large and small objects (Tr. 77-78). She reported that she was terminated from this job because the work was too hard for her, particularly as it related to the use of her hands (Tr. 273-74). Through treatment and over-the-counter medication, plaintiff reported that her hands improved (Tr. 275). However, she did not believe she could return to her work as a distribution technician because it required lifting more than five pounds (Tr. 276). At the same time, she stated she could have performed the job if her wrists improved. Later, however, plaintiff stated the frequency of lifting and pulling supplies was the problem rather than the weight of the supplies.

Despite complaints of wrist and hand problems, plaintiff performed both these positions following her carpal tunnel surgery. There is no evidence that the carpal tunnel increased as of the alleged onset date. Plaintiff's attorney modified plaintiff's onset date based on plaintiff's back pain. There is also no medical evidence that doctors restricted plaintiff's use of her hands or arms. Because of plaintiff's subjective complaints of problems with her hands, the ALJ asked

8

the vocational expert what jobs she could perform if she could lift more than five pounds. The vocational expert stated that plaintiff still could perform 80-85% of the sedentary jobs (Tr. 295). Since the ALJ ultimately determined that plaintiff could lift more than five pounds, the ALJ properly found that plaintiff could perform her past relevant work.

In response to the order to show cause, plaintiff's mother stated that plaintiff subsequently experienced medical problems that required hospitalization.  Since this review is limited to the record before the ALJ at the time of the hearing, the court's review is also limited. If plaintiff believes that her changed condition qualifies her for disability benefits, she should submit a new application that includes the more recent medical information.

IT IS ACCORDINGLY ORDERED this 11th day of August 2006, that the court denies plaintiff's request to reverse and remand the final decision of the Commissioner (Dkt. No. 15).


                                        s/ J. Thomas Marten
                                        J. THOMAS MARTEN, JUDGE